UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FRED RESNICK AND THE MADISON COMPANY, INC., | ) ) ) |
| *Plaintiffs,* | ) )   1:12-cv-1096-JMS-MJD |
| *vs.* | ) ) ) |
| GIBRALTER FINANCIAL CORPORATION AND GIBRALTER BUSINESS CAPITAL, LLC, | ) ) ) ) |
| *Defendants.* | ) |

## ORDER DENYING MOTION TO REMAND

Presently before this Court is Plaintiffs Fred Resnick and The Madison Company's ("Plaintiffs") motion to remand their case against Defendant Gibraltar Financial Corporation ("GFC") and Gibraltar Business Capital, LLC ("GBC") (collectively, "Defendants") to state court pursuant to 28 U.S.C. § 1447(c).

### I.
### PROCEDURAL BACKGROUND

Plaintiffs filed their two-count Complaint in state court on July 16, 2012. [Dkt. 1-1.] Count I alleges a claim for compensatory and punitive damages against GFC for breach of their written agreement ("Agreement") with Plaintiffs. [*Id.* at 7.] Count II alleges a claim for compensatory and punitive damages against GBC as successor to or, alternatively, as a mere continuation of GFC. [*Id.* at 8.] Plaintiffs seek compensatory and punitive damages. [*Id.* at 7-8.]

On August 8, 2012, Defendants removed the case to federal court pursuant to 28 U.S.C. § 1332, alleging that this Court has diversity jurisdiction over the matter. [Dkt. 1.] Two days later, Plaintiffs filed their Motion to Remand for Lack of Subject Matter Jurisdiction ("Motion to Re-

mand"). [Dkt. 9.] Plaintiffs contend that Defendants failed to establish that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs. [*Id.* at 1-2.] On August 24, 2012, Defendants filed their Response in Opposition to Plaintiffs' Motion to Remand, contending that they sufficiently established that the amount in controversy exceeds $75,000. [Dkt. 12.] On September 14, 2012, with the Court's permission, Plaintiffs filed an Amended Reply in Support of the Motion to Remand the Case to State Court. [Dkt. 19.]

## II.
### APPLICABLE LAW

Federal courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," between citizens of different states. 28 U.S.C. § 1332(a)(1). "If at any time ... it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Regardless of the "waste of effort" that results from a case partially or fully litigated in the wrong court, "both the Supreme Court and [the Seventh Circuit Court of Appeals] have noted time and again that subject matter jurisdiction is a fundamental limitation on the power of a federal court to act." *Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 980 (7th Cir. 2000).

The party seeking to invoke federal jurisdiction must establish both complete diversity of citizenship and that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The Court is satisfied that there is complete diversity among the parties; at issue here is only whether this case meets the amount in controversy requirement.

**A) Standard for Meeting Amount in Controversy Requirement in Removal Cases**

In *Oshana v. Coca–Cola, Co.*, the Seventh Circuit Court of Appeals explained the standard for meeting the amount-in-controversy requirement in cases removed to federal court. 472

F.3d 506 (7th Cir. 2006). "[T]he amount in controversy is the amount required to satisfy the plaintiff's demands in full on the day the suit begins, or in the event of removal, on the day the suit was removed." *Id.* at 510. In general, the proponent of jurisdiction has the burden of showing by a preponderance of the evidence facts that suggest the amount in-controversy requirement is met. *Id.* That is easier said than done, however, when the plaintiff does not want to be in federal court and provides little information about the value of its claims. *Id.* In such a case, "a [defendant's] good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence." *Id.* "[O]nce the defendant in a removal case has established the requisite amount in controversy, the plaintiff can defeat jurisdiction only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Id. at* 510-11.

Punitive damages can satisfy the minimum amount in controversy required for diversity jurisdiction if they are recoverable under state law. *LM v. Ins. Corp. v. Spaulding Enters. Inc.*, 333 F.3d 542, 551 (7th Cir. 2008). Under Indiana law, punitive damages are available if a defendant is shown to have "acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing…." *Bud Wolf Chevrolet, Inc. v. Robertson¸* 519 N.E.2d 135, 137-38 (Ind. 1998). A punitive damage award may not be more than three times the amount of compensatory damages awarded in the action or $50,000, whichever is greater. Ind. Code. § 34-51-3-4. However, the Seventh Circuit looks with skepticism upon the possibility of punitive damages to satisfy large portions of the jurisdictional amount. *See Anthony v. Sec. Pac. Fin. Servs.*, 75 F.3d 311, 315 (7th Cir. 1996) ("When a claim for punitive damages makes up the bulk of the amount in controversy, and may even have been colorably asserted solely to confer jurisdiction, we should scrutinize that claim closely.").

### B) Standard for Dismissing a Case Despite Removing Party's Good-Faith Belief

The Seventh Circuit has made clear, in *Oshana* and elsewhere, that in a removal case, once a defendant has shown a good-faith basis for removing the case to federal court, "the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum." *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006). Any uncertainty about whether the plaintiff can prove its substantive claim, and whether damages (if the plaintiff prevails on the merits) will exceed the threshold, does not justify dismissal. *Id.* at 543. Whether the plaintiff actually recovers more than $75,000 is likewise immaterial; what matters is the amount in controversy on the day of removal. *Oshana*, 472 F.3d at 513. Only if it is "legally certain that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be [remanded]." *Meridian*, 441 F.3d at 542.

The test of "legal certainty" is a stringent one. *Oshana*, 472 F.3d at 510. Generally, only three situations clearly meet the legal-certainty standard for purposes of defeating subject matter jurisdiction:

> 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of substantive law or measure of damages limits the amount of money recoverable by the plaintiff; and 3) when independent facts show that the amount of damages was claimed by the plaintiff [or defendant, in a removal case] merely to obtain federal court jurisdiction.

*Crowder Lawn & Garden v. Federated Life Ins. Co.*, 2010 WL 4923898, *4 (S.D. Ind. 2010) (*citing* Wright, Federal Practice and Procedure § 3702, at 98-101).

In *Oshana,* the plaintiff refused to formally disclaim damages in excess of $75,000; therefore, the Seventh Circuit held that the amount in controversy did not appear to a legal certainty to be under $75,000. 472 F.3d at 512. The Seventh Circuit noted that "if [Plaintiffs] really

wanted to prevent removal, [they] should have stipulated to damages not exceeding the $75,000 jurisdictional limit." *Id.* at 511.

## III.
### DISCUSSION

Plaintiffs contend that remand is proper because Defendants have not established that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs. [Dkt. 9.] Specifically, Plaintiffs' argue that the commissions they seek total only $54,232.45. [*Id.* at 2-3.] Defendants respond that even if the compensatory damages alone do not satisfy the jurisdictional threshold, additional punitive damages sought by Plaintiffs place more than $75,000 in controversy. [Dkt. 12 at 5-6.]

### A) Did Defendants Have a Good-Faith Basis to Estimate that at least $75,000 was at Stake at the Time of Removal?

The first step in determining whether Defendants had a good-faith basis to estimate that the jurisdictional threshold was met is establishing the amount of compensatory damages the evidence supports. In this case, compensatory damages arise from Defendants' alleged breach of a written agreement with Plaintiffs. The Agreement provided that GFC would pay Plaintiffs a 15% commission on all deals emanating from Indiana and/or Mr. Resnick's referral sources. [Dkt. 1 at 38-39.] Defendants' stated basis for removal in this action is that Plaintiffs seek potential commission payments in the amount of $92,482.45. [*Id.* at 5 ¶ 19.] The potential commission payments arise from three different transactions, and the Court will address whether Defendants had a good-faith basis for including the amount from each transaction. After determining the amount of compensatory damages in controversy, the Court must consider Plaintiffs' request for punitive damages.

### 1) Contemplated Loan from GBC to Distribution One

The first transaction involves a contemplated loan from GBC to Distribution One, LLC ("Distribution One Loan") in the amount of $1.5 million dollars. [Dkt. 1 at 4 ¶ 16.] Defendants assert that because Plaintiffs alluded to this loan in their Complaint and in their initial demand letter, they intend to collect a commission from that transaction. [*Id.* at 4 ¶ 15.] Although Defendants deny that GBC owes any commission to Plaintiffs, if any commission is owed, Defendants assert that the amount at issue would be $38,250. [Dkt. 1 at 4 ¶ 18.]

In support of their Motion to Remand, Plaintiffs argue that they never claimed any commission from the Distribution One Loan, having always understood that it never closed. [Dkt. 9. at 2.] Rather, Plaintiffs contend they referenced the Distribution One Loan in their Complaint only to show the close relationship that existed between GFC and GBC "and to substantiate Plaintiffs' claim that GBC is a successor to/mere continuation of GFC." [*Id.*] In support of this theory, Plaintiffs attach an affidavit from their attorney, R.C. Richmond, III, in which Mr. Richmond states that the reference to the Distribution One Loan in the Complaint was intended to only show the relationship between GFC and GBC. [Dkt. 9-1 at 1-2 ¶ 4.]

The Complaint itself supports Plaintiffs' contention and confirms that the potential Distribution One Loan was referenced as one of many different pieces of evidence suggesting that GFC and GBC have always been very closely affiliated. [Dkt. 1-1 at 6 ¶ 12 (alleging that GFC and GBC "are very closely affiliated, and have been since long before [the time at issue], as evidenced by the following facts . . .").] The Complaint does not discuss any of the details of the transaction but, instead, focuses on enclosures indicating that GBC and GFC shared an address and a fax number. [*Id.*] Additionally, Plaintiffs' initial demand letter uses the Distribution One Loan documents in an almost identical fashion. [Dkt. 1 at 8-9]

Given this evidence, Defendants have failed to establish that at the time of removal they had a good-faith basis for including the potential commission from the Distribution One Loan in the amount in controversy. Therefore, the potential commission from that potential loan will not be considered towards the amount in controversy.

### 2) Revolving Loan From GBC to Chromecraft Remington

The second transaction at issue involves a revolving loan from GBC to Chromecraft Remington, Inc. ("Chromecraft Loan"). Although GBC denies that it owes Plaintiffs any commission from the Chromecraft Loan, it asserted in its removal papers that if any commission is owed, Plaintiffs' portion would be $17,628.73. [Dkt. 1 at 4-5 ¶ 18.] Although Plaintiffs assert that they did not know the details of the transaction or the amount at issue, they admit that they are seeking compensation for the commission on the Chromecraft Loan and do not dispute the Defendants' proffered amount in controversy from that loan. [Dkt. 9 at 2 n.3.]

To the extent that Plaintiffs argue that this amount should not be considered because Plaintiffs did not know the amount to which they were entitled when they filed their Complaint, that argument must be rejected because at issue is the Defendants' good-faith belief regarding the amount in controversy at the time of removal. Plaintiffs confirm that they are seeking commission from the Chromecraft Loan and do not present any argument disputing the Defendants' proffered amount in controversy from that transaction. Therefore, the evidence indicates that Defendants had a good-faith basis for including this amount—$17,628.73—as part of the amount in controversy at the time of removal.

### 3) Commissions Owed by GFC

The third potential commission payment arises from commissions that GFC, the signer of the Agreement, allegedly owed to Plaintiffs ("GFC Commissions"). In their removal papers, De-

fendants contended that the amount of the GFC Commissions allegedly owed to Plaintiffs total $36,603.72. [Dkt. 1 at 4 ¶ 18.] Plaintiffs argue that because Defendants have failed to identify the specific transactions giving rise to the GFC Commissions, they have failed to provide evidence of a good-faith belief that $36,603.72 is in controversy from those commissions. [Dkts. 9 at 2; 19 at 2-3.]

In support of the proffered amount in controversy from the GFC Commissions, Defendants submitted an affidavit from Scott A. Winicour, the Chief Operating Officer of GBC and a former employee at GFC, with its removal papers. [Dkt. 1 at 25.] Mr. Winicour attests that the amount of commissions allegedly due to Plaintiffs from transactions brokered to GFC is $36,603.72. [*Id.* at 26 ¶¶ 5-6.] While Plaintiffs argue that this amount should not be considered because neither Defendants nor Mr. Winicour identify the specific transactions used to calculate that figure, Plaintiffs' Complaint confirms that Ms. Winicour would have the most direct knowledge about the amount in controversy from the GFC Commissions. Specifically, Plaintiffs allege in their Complaint that Mr. Winicour's father entered into the Agreement at issue on behalf of GFC so that Mr. Resnick would introduce his sources to Mr. Winicour, who was to take over GFC. [Dkt. 1-1 at 5 ¶ 8.] It follows that as the one who was interacting with both Plaintiffs and prospective Indiana customers, Mr. Winicour would have personal knowledge about what commissions may be at issue. As such, the Court considers Mr. Winicour's affidavit to be evidence that at the time of removal, Defendants had a good-faith belief that $36,603.72 from the GFC Commissions was at issue.

Moreover, in their Motion to Remand, Plaintiffs accepted Defendants' calculation of the GFC Commissions towards the amount in controversy. [Dkt. 9 at 2.] Although expressing dissatisfaction with Defendants' unwillingness to come forward with more information about the

underlying transactions, Plaintiffs twice stated that they sought commissions totaling $54,232.45, which includes the full amount of GFC commissions alleged by Defendants to be in controversy. [*Id.* at 2-3.]

The evidence indicates that at the time of removal, Defendants had a good-faith belief that Plaintiffs' sought the GFC Commissions and they have provided evidence regarding that amount believed to be at issue. Therefore, the amount of those commissions—$36,603.72—will be included in determining whether the amount in controversy meets the jurisdictional threshold.

### 4) Punitive Damages

Based on the above analysis, the Court concludes that at the time of removal, Defendants had a good-faith basis for believing that the amount of compensatory damages in controversy was $54,232.45 ($17,628.73 + $36,603.72). Although this is not enough to meet the jurisdictional threshold for the requisite amount in controversy on its own, Plaintiffs' Complaint also seeks punitive damages against both Defendants for allegedly breaching the Agreement with malice, fraud, gross negligence, or oppressiveness that was not the result of mere negligence.[1] [Dkt. 1-1 at 7, 8.]

A punitive damage award may not be more than three times the amount of compensatory damages awarded in the action or $50,000, whichever is greater. Ind. Code. § 34-51-3-4. Having determined that at the time of removal Defendants had a good-faith basis for the belief that at least $54,232.45 in compensatory damages was at issue, the possibility that Plaintiffs could also

---

[1] As previously stated, under Indiana law, punitive damages are available if a defendant is shown to have "acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing…." *Bud Wolf Chevrolet*, 519 N.E.2d at 137-38. Defendants correctly note that punitive damages can satisfy the minimum amount in controversy required for diversity jurisdiction if they are recoverable under state law. *LM*, 333 F.3d at 551.

receive three times that amount for punitive damages pushes the amount in controversy far beyond the required $75,000 jurisdictional threshold. The gap between the jurisdictional threshold and the amount of compensatory damages in issue—$20,767.55—is not "the bulk of the amount in controversy," and is less than half of the amount of compensatory damages. Moreover it is Plaintiffs who asserted the punitive damage claim, so it could in no way have been asserted "solely to confer jurisdiction." Thus, the inclusion of punitive damages to arrive at the jurisdictional threshold passes close scrutiny. *Anthony*, 75 F.3d at 315.

The Court concludes that Defendants have shown by a preponderance of the evidence that they had a good-faith belief that more than $75,000, exclusive of interest and costs, was in controversy when they removed this action to federal court.

### B) At the Time of Removal, Did it Appear to a Legal Certainty that Plaintiffs' Claim was for Less than $75,000?

Because the Court has concluded that the Defendants have met their burden to show that they had a good-faith basis for removing this case to federal court, the burden shifts to the Plaintiffs to demonstrate that at the time of removal, it was legally certain that the amount in controversy was less than the jurisdictional minimum. *Meridian Sec. Ins. Co.*, 441 F.3d at 542.

Plaintiffs attempt to meet the legal certainty standard by arguing that Defendants only relied on the possible commission from the Distribution One loan to "attempt by Defendants to bootstrap themselves into federal court." [Dkt. 9 at 2-3.] That argument fails, however, because even if that was correct, the Court has concluded that the Defendants have presented sufficient evidence to support their good-faith belief for removal even without that transaction, which the Court did not consider. Plaintiffs do not argue that the terms of the contract limit their possible recover or that a specific rule of substantive law limits the amount of recovery.

Moreover, the test of "legal certainty" is a stringent one, and the Seventh Circuit has noted that plaintiffs can prevent removal by stipulating that their damages do not exceed $75,000, if that is the case. *Oshana*, 472 F.3d at 510. When asked to stipulate that they had less than that amount of damages, however, Plaintiffs refused to do so. [Dkt. 12-1 at 2.] Their refusal is telling.

For these reasons, the Court concludes that at the time of removal, it did not appear to a legal certainty that the amount in controversy was less than $75,000.

## IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Remand. [Dkt. 9.]

09/21/2012

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Vincent Thomas Borst
ROBBINS SALOMON PATT LTD
vborst@rsplaw.com

Catherine A. Cooke
ROBBINS SALOMON & PATT, LTD.
ccooke@rsplaw.com

Richard Charles Richmond III
TAFT STETTINIUS & HOLLISTER LLP
rrichmond@taftlaw.com